SARAH GRUWELL et al., Appellees, v. ED. GRUWELL et al., Appellants.

DEEDS: Construction—Estates and Interests Conveyed—Qualification by Habendum Clause. The granting clause in a deed, "do hereby sell and convey unto Sarah Gruwell and Ben Gruwell," was sufficient in form to have conferred on the grantees full fee title; but, as it contained no words of inheritance, it was subject to the qualification in the habendum clause, providing that the premises were to be held by either grantee surviving, until death of survivor, when title should vest in grantees' legal heirs.

DEEDS: Construction—Estates and Interests Conveyed—Joint Tenancy. Under Section 2923, Code, 1897, a deed providing, "do hereby sell and convey" to two grantees, the premises to be held by the survivor *undivided* until the death of survivor, when title was to vest in grantees' legal heirs, held not to create a *joint* tenancy in the grantees.

DEEDS: Construction—Rule in Shelley's Case. Rule in Shelley's Case discussed; and *held* that, even if a wife, under the provisions of a deed, would, as a survivor of a joint tenancy, have taken the fee, under the Rule in Shelley's Case, she would have taken the fee, not from her husband, her predeceased cotenant, but from the original grantor.

DEEDS: Construction—Estates and Interests Conveyed—Determination of Interests. Where a deed recited that premises were sold and conveyed to grantees, who were husband and wife, to be held by either husband or wife, whichever survived, and to be held by the survivor *undivided* until death of said survivor, and then title to vest in the legal heirs of the grantee, and the husband died before the wife, *held* that title to said premises passed as follows:

1. That, upon his death, the husband died seized of an undivided ·one-half interest in the property, subject to the life estate of his wife therein, and she was also entitled to take her distributive share, ·as his widow, of one third in said one-half interest.

2. That, upon ·the death of the widow, the heirs of the husband were entitled to a one-third interest, and the heirs of the widow were entitled to a two-thirds interest, in the fee title to the entire premises.

*Appeal from Wapello District Court.*—D. M. ANDERSON, Judge.

MARCH 11, 1919.

ORIGINALLY, this was a suit in equity to reform a deed. By subsequent amendment, it became a suit to construe a deed and to quiet title. There was a decree for the plaintiffs, and the defendants appeal.—*Reversed.*

*W. W. Rankin* and *Work & Work,* for appellants.

*Gillies & Daugherty,* for appellees.

EVANS, J.—The controversy involves the title to 80 acres of land. This land was bought in August, 1903, by Ben and Sarah Gruwell, husband and wife. The original plaintiffs were Ben and Sarah Gruwell and their four children. The original defendants were the eight children of Ben Gruwell by a former marriage. With these defendants were joined the original grantors in the deed of 1903, who claimed no interest in the subject-matter of the controversy. The granting and habendum clauses of the deed in question were as follows:

"Know all men by these presents that we, Sylvester Streeby and wife, Rebecca Streeby, of Wapello County, and state of Iowa, in consideration of the sum of $2,000.00 in hand paid by Sarah Gruwell and Ben Gruwell, of Wapello County, and state of Iowa, do hereby sell and convey to the said Sarah Gruwell and Ben Gruwell the following described premises situated in Wapello County, and state of Iowa, to wit: [description  *  *  *]. Above premises are to go and be held by either Sarah Gruwell or Ben Gruwell, whichever survives the other, and be held by said survivor undivided until the death of said survivor, when title to said land is to be vested in the legal heirs of above grantees as the law directs."

It was charged in the petition that there was a mistake in the deed, in that it was intended to provide therein an estate for life to Ben and Sarah and to the survivor of them, and that the fee in remainder should go to the common heirs of Ben and Sarah, being their four coplaintiffs, to the exclusion of the other heirs of Ben Gruwell. The defendant heirs answered, denying the alleged mistake and resisting reformation, and alleged their interest in the property in accord with the terms of the deed as written. This was the state of the pleadings for the first two years of the pendency of the suit in the district court. Pending the suit, in May, 1917, Ben Gruwell died, leaving Sarah surviving him. Thereupon, Sarah filed a substituted petition, wherein she abandoned the claim of mistake in the deed and the prayer for reformation, and wherein she alleged herself, as the survivor of her husband, to be the owner in fee simple of the land in question, under and by virtue of the deed as previously set forth. In making this latter contention, she invoked the operation of the Rule in Shelley's Case. Her substituted petition was directed, not only against the defendants, but was presented, also, as a cross-petition against her four coplaintiffs, being her children. The four coplain-

tiffs did not join with her in the substituted petition. On the contrary, they adhered to the original petition, and added a second division or count, as an amendment thereto. By such amendment they claimed under the deed without reformation, and averred that such deed, properly construed, conveyed to them, subject to the life estate of their parents, the remainder in fee simple, they being the only heirs common to both life tenants. As between the plaintiff Sarah and the defendant heirs, an issue of law was made on the question whether the legal effect of the deed under consideration carried the fee simple title to the plaintiff Sarah. On this question, the position of Sarah was hostile not only to the defendant heirs but to the coplaintiff heirs as well. That issue was decided on the demurrer of the plaintiff Sarah to the answer of the defendant heirs. The trial court sustained the demurrer. The defendants standing on their pleading, decree was entered for the plaintiff Sarah, adjudging her to be the owner of the property in fee simple.

No account appears to have been taken, at the trial, of the pleading of the coplaintiff heirs. They were represented by the same counsel as the plaintiff Sarah, and their claims in hostility to the plaintiff Sarah which were put forward in their pleading do not seem to have been pressed upon the attention of the trial court. The inference naturally arises that they were content with the awarding of title to their mother, and that they were willing to await the course of nature, and take title by inheritance under her. After decree, and before this appeal was taken, the plaintiff Sarah died, and her administrator has been substituted in her stead. Her coplaintiffs, being her only heirs, are the only parties interested in sustaining the decree. They cannot sustain it without waiving their previous claims, adverse to their mother. They have not, in fact, pressed their adverse claims in argument here. We shall assume, there-

fore, that the plaintiff heirs elected to stand upon the ground taken by the mother in the district court, and we shall consider the case on that assumption, ignoring the manifest confusion of practice and pleading.

We have already set forth the parts of the deed material for our consideration. It contains a granting and a habendum clause. The granting clause, standing alone, was sufficient in form to have conferred upon the grantees the full fee title. But its effect in this respect was presumptive only, and not conclusive. It contained no words of inheritance, and was, therefore, subject to qualification by other language contained in the deed. *Husted v. Rollins,* 156 Iowa 546. Qualification is found accordingly in the habendum clause. This habendum clause in terms limited the title of the grantees named in the granting clause.

1. DEEDS: construction: estates and interests conveyed: qualification by habendum clause.

The argument for the plaintiffs rests upon two propositions: (1) That the life tenants took their life estate, not as tenants in common, but as *joint* tenants, and that Sarah Gruwell, as the survivor of them, took the title of both. (2) That, because the habendum clause purported to pass the remainder in fee to the heirs of the life tenants, therefore the legal effect of the deed, under the Rule in Shelley's Case, was to confer the full legal title upon such life tenants, and upon Sarah as the survivor.

If either of the foregoing propositions prove untenable, the whole structure of the case for plaintiffs falls with it.

First: Can it be said that the habendum clause discloses an intent to create a *joint* tenancy, and not a tenancy in common? Under Section 2923 of the Code, conveyances made to two or more in their own right create a tenancy in common, unless a contrary intent is expressed. Under the granting clause alone, a tenancy in common would be clearly implied. Is there any-

2. DEEDS: construction: estates and interests conveyed: joint tenancy.

thing in the habendum clause to qualify such implication?
It provides:

"Above premises are to go and be held by either Sarah
or Ben Gruwell, whichever survives the other, and be held
by said survivor undivided until the death of said sur-
vivor, when title to said land is to be vested in the legal
heirs of above grantees as the law directs."

Not only does the clause in question fail to disclose af-
firmatively an intent to create a *joint* tenancy, but, by its
fair implications, it tends to negative such intent. The
provision that the premises "be held by said survivor *un-
divided* until the death of said survivor" is a finger of warn-
ing and restraint against any premature attempt by the
heirs of either tenant to enter into the enjoyment of their
succession before the death of both. Furthermore, the
prominent characteristic of a joint tenancy, as distin-
guished from a tenancy in common, is that the survivor
takes the whole right of property of both. In this case, if
Ben Gruwell had only a life estate in the premises, his
death terminated his estate, and no right of property sur-
vived him to anyone. There was nothing for a surviving
joint tenant to take.

Indeed, if we were to find that the deed does disclose
an intent to create a joint tenancy, even then the Shelley
Rule would not be available to carry the fee title to the
plaintiff Sarah. True, the deed, by its
terms, provides that the remainder shall go
to the heirs of the life tenants after the
death of the survivor, "as the law directs."
The most that can be said for this provision is that the
property in fee should be divided between the heirs of the
cotenants, and in the same proportions which they would
receive if they were to take by inheritance from each co-
tenant. Concede, only for the sake of the argument, that, if
all the heirs of each cotenant were common to both coten-

3. DEEDS: con-
struction:
Rule in Shel-
ley's Case.

ants, then the Rule in Shelley's Case would apply, and cast the fee title upon the purported life tenants as joint tenants. Yet such is not the fact here. The eight defendants were children of Ben by a former marriage. They were not heirs of Sarah. If Sarah, as the survivor of a joint tenancy, took the fee, she took it, nevertheless, not from her predeceased cotenant, but from the original grantor. *Wood v. Logue,* 167 Iowa 436. By the terms of the deed, as so construed, therefore, in the light of the survivorship of Sarah, it purported to grant to her a life estate, with a remainder not only to her heirs, but also to the heirs of Ben. This last provision would defeat the operation of the Shelley Rule. The compensation or equity which underlies the Shelley Rule, as an offset to the apparent injustice of casting upon the present ancestor the purported remainder granted to future heirs, is that the property or its equivalent will, in ordinary course, reach such future heirs by inheritance. Wherever the purported grant lodges the remainder in a remainderman, in hostility to the line of inheritance, the Rule in Shelley's Case does not operate.

Of course, the real objective of such rule is not to work advantage or disadvantage upon the first or a future taker, but to lodge in the present tenure the power of alienation. For, though a taker take a title in "fee simple forever," inexorable Nature limits his enjoyment to an estate for life; and, in the absence of alienation, the "fee simple forever" finds its successive beneficiaries down the endless line of inheritance.

It will serve no useful purpose to enter into a discussion of the Shelley Rule. It has been fully discussed in our previous cases: *Doyle v. Andis,* 127 Iowa 36, 66; *Kepler v. Larson,* 131 Iowa 438; *Westcott v. Meeker,* 144 Iowa 311; *Westcott v. Binford,* 104 Iowa 645; *Harlan v. Manington,* 152 Iowa 707, 715; *Daniels v. Dingman,* 140 Iowa 386, 387;

*Wood v. Logue,* 167 Iowa 436; *Sanderson. v. Everson,* 93 Neb. 606 (141 N. W. 1025).

Construing the deed under consideration according to its terms, it purports either: (1) To confer a life estate upon both grantees, as tenants in common, for the term of the life of the survivor, with a remainder over to the heirs of Ben, as to the undivided one half, and to the heirs of Sarah, as to the other one half; or (2) to confer upon both grantees, as tenants in common, a life estate during the life of both, and upon the survivor, as exclusive tenant, a life estate for the remaining term of her life, with the remainder over to the heirs of Ben, as to one undivided one half, and to the heirs of Sarah, as to the other undivided one half; or (3) to confer upon both grantees, as tenants in common, a fee title, subject only to a life estate to the survivor in the undivided one half of her predeceased cotenant.

**4. DEEDS: construction: estates and interests conveyed: determination of interests**

Upon either construction, the result in this case would be the same, and we need not choose between them. If either construction 1 or 2 should be adopted, then the Rule in Shelley's Case would operate to cast the fee title upon the grantees, as tenants in common. If construction 3 be adopted, then the same title is conferred by the express terms of the deed. It is immaterial to the present parties before the court whether their ancestors took title under the operation of the Shelley Rule or under the strict terms of the deed.

It follows that Ben Gruwell died seized of an undivided one half of the property, subject to the life estate of his surviving widow. The surviving widow was also entitled to take her distributive share in such undivided one half. At the time of her death, therefore, Sarah Gruwell was entitled to take an undivided two thirds of the property. The final result is that the twelve heirs of Ben take one third of

the fee title, and the four heirs of Sarah take two thirds thereof. The four plaintiffs take under both grantees, whereas the eight defendants take only under one. The mathematical outcome is that the eight defendants take eight twelfths of one third, or two ninths of the property, and the four plaintiffs take seven ninths thereof.

In holding that the plaintiff Sarah took the full title to the property, the trial court erred. The decree is accordingly—*Reversed.*

LADD, C. J., PRESTON and SALINGER, JJ., concur.